**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMES R. TURNER, JR.,        )    Civil Action No. 2: 20-cv-0197
                     )
        Petitioner,       )    Chief United States Magistrate Judge
                     )    Cynthia Reed Eddy
        v.            )
                     )
KEVIN J. RANSOM, SUPERINTENDENT )
SCI DALLAS; ATTORNEY GENERAL OF )
PENNSYLVANIA, AND  DISTRICT     )
ATTORNEY OF BEAVER COUNTY,    )
                     )
        Respondents.     )

## MEMORANDUM OPINION[1]

Petitioner, James R. Turner, Jr., a prisoner currently confined at the State Correctional Institution – Dallas, in Dallas, Pennsylvania, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF No. 1). He is challenging the judgment of sentence imposed on him on March 3, 2016, by the Court of Common Pleas of Beaver County, Pennsylvania, at its criminal case at CP-04-CR-0001944-2014. For the reasons outlined below, the Petition will be denied and a certificate of appealability will also be denied.

## II.    REPORT

### A.    *Jurisdiction*

This Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. That provision allows a federal court to grant a state prisoner the writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a). It is Turner's

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment. (ECF Nos. 27 and 28).

burden, as petitioner, to prove he is entitled to the writ. *Id., see, e.g., Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

      B.    *Relevant Factual and Procedural Background*[2]

1. State Court Proceedings

A jury trial commenced on September 4, 2016, before the Honorable James J. Ross. Turner was represented at trial by Assistant Beaver County Public Defenders Frank Paganie, Esquire, and William Braslawsce, Esquire. The Pennsylvania Superior Court, in its Memorandum filed March 11, 2019, affirming the dismissal of Turner's PCRA petition, recounted the factual background and procedural history of the case:[3]

> On the night of August 14, 2014, Appellant and his girlfriend ("Victim") went to a bar. After a few drinks, Victim left the bar and did not return, leaving Appellant behind. Appellant obtained a ride to Victim's home and confronted Victim about leaving him at the bar. In the course of this confrontation, Appellant repeatedly stabbed Victim in multiple parts of her body. Appellant left Victim's home, taking her car and the knife he used to stab her. Later, Appellant discarded the knife in the Ohio River. The stab wounds to Victim's left carotid artery and vein caused her to bleed out slowly and die. Appellant surrendered to police the next day, claiming he had acted in self- defense because Victim attacked him first with a knife. Evidence indicated Appellant was intoxicated when he attacked Victim, and Appellant claimed he was also intoxicated when he gave his statement to the police. On the day of Appellant's arrest, the police obtained a search warrant to collect blood samples from Appellant to compare to blood samples obtained from the scene of the attack. The Commonwealth utilized the blood samples for DNA analysis and the crime lab later destroyed them pursuant to lab protocol.

---

[2]      Respondents electronically filed reproduced copies of documents filed with the Court of Common Pleas in Turner's underlying state criminal case at docket CP-04-CR-0001944-2014, ECF No. 12. Exhibits 2 – 19. The documents are indexed (ECF No. 12-1) and are numbered 1 – 2341. This Court will cite these records as "SCR No. ___." When available, specific page numbers will be indicated.

[3]      The facts found by the state courts are presumed correct. See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.")

> On February 12, 2016, a jury convicted Appellant of third degree murder. The court sentenced Appellant on March 3, 2016, to twenty (20) to forty (40) years imprisonment. On March 11, 2016, Appellant timely filed post sentence motions, filed by numerous *pro se* and counseled filings and extensions of time. The court denied Appellant's post-sentence motions on November 2, 2016. On November 23, 2016, Appellant filed a petition for appointment of new counsel. On December 2, 2016, Appellant's prior counsel timely filed a notice of appeal on Appellant's behalf. Appellant filed a motion to withdraw the notice of appeal on December 9, 2016. Following a hearing on the same day, the court allowed Appellant to discontinue his direct appeal and appointed conflict counsel to pursue a PCRA petition instead. Appellant first filed a pro se position, and new counsel filed an amended PCRA petition on June 19, 2017.
>
> At a PCRA hearing on September 25-26, 2017, the court heard testimony from Appellant's sister, brother-in-law, son, and trial counsel. Also at the PCRA hearing, Appellant made an oral motion to reinstate his direct appeal rights *nunc pro tunc*, which the court denied on December 5, 2017. On January 30, 2018, the court also denied PCRA relief. Appellant filed a *pro se* notice of appeal on February 12, 2018. On February 15, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. Rule 1925(b). Counsel timely filed an amended notice of appeal on February 26, 2018, and a timely rule 1925(b) statement on March 8, 2018.

*Commonwealth v. Turner,* No. 294 WDA 2018 (Pa. Super. March 11, 2019) (unpublished memorandum) (SCR No. 1241 – 1251).    On PCRA appeal, Turner raised seven ineffective assistance of trial counsel claims.  The appellate court dismissed on the merits six claims and dismissed one claim based upon a violation of state procedural rules.  (*Id*.)  Turner filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which was denied on December 9, 2019.  (ECF No. 1-2 at 44).

## 2.  Federal Court Proceedings

Having been denied relief in state court, Turner filed the instant federal habeas petition, in which he raises eight claims, some with multiple sub-parts. (ECF No. 1).  Respondents  have filed an Answer (ECF No. 12), to which Turner filed a Summary of Argument (ECF No. 21), a 55-page Reply (ECF No. 22), and an Amendment to his Reply, with attached exhibits. (ECF No.

25). The Court has reviewed the filings of the parties, the electronic copies of the state court record, and the Memorandum Opinion of the Superior Court filed March 11, 2019. The matter is fully briefed and ready for disposition.

C. *The Standard for Habeas Relief under 28 U.S.C. § 2254*

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). Federal courts reviewing habeas corpus petitions "must be vigilant and independent . . . a commitment that entails substantial judicial resources." *Id.* This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "which imposes significant procedural and substantive limitations on the scope" of the Court's review. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). Under 28 U.S.C. § 2254, federal courts in habeas cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010). Various standards must be met before the Court can review the merits of this habeas petition.

1. <u>Timeliness</u>

Before the Court can address the merits of Turner's petition, it must first decide whether it was timely filed. *Romansky v. Superintendent Green SCI*, 933 F.3d 293, 298 (3d Cir. 2019). Pursuant to AEDPA, a state prisoner must file his federal habeas claims within one year of the date his judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A). Respondents do not contest that the petition was timely filed and the Court independently finds that the petition was timely filed. (ECF No. 12 at 8).

### 2. Has the Petition Presented Cognizable Habeas Claims?

Habeas relief may be afforded to a state prisoner only when his or her custody violates federal law. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1, 6 (2010). The Petition presents a due process claim and numerous ineffective assistance of trial counsel claims. All of the claims are cognizable in habeas proceedings.

### 3. Federal Habeas Review of Properly Exhausted Claims

Among AEDPA's procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits. *Carpenter v. Vaughn*, 296, F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *Johnson v. Williams*, 568 U.S. 298, 302 (2013). "Fair presentation" of a claim merely requires the petitioner to "present [the] federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Greene v. Palakovich*, 606 F.3d 85, 93 (3d Cir. 2010) (citation omitted). For § 2254(d) purposes, a claim has been adjudicated on the merits "when a state court has made a decision that finally resolves the claim on the basis of its substance, rather than on a procedural, or other, ground." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 545 (3d Cir. 2014) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)).

When a claim is properly exhausted in the state courts and then raised on federal habeas review, the level of deference afforded to the state-court decision is substantial. *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017), *cert. denied sub nom., Gilmore v. Bey*, 138 S.Ct. 740 (2018). AEDPA "does not 'permit federal judges to . . . casually second-

guess the decisions of their state-court colleagues or defense attorneys.' " *Collins*, 742 F.3d at 543 (quoting *Burt v. Titlow*, 571 U.S. 12, 14 (2013)). As a result, under § 2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This is an intentionally difficult standard to meet. *Richter*, 562 U.S. at 102. Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" clearly established Supreme Court precedent. *Id*. Thus, to obtain federal habeas relief on an exhausted claim, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Id*. at 103.

Finally, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petition[er] must overcome the limitation of § 2254(d)[ ] on the record that was before that state court"; "evidence introduced in federal court has no bearing on § 2254(d)[ ] review." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (footnote omitted). "[D]istrict courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d). Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record." *Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011). "This would contravene AEDPA, which requires petitioners to diligently present the facts in state court before proceeding to the federal courthouse." *Id*.

Although mandatory, the exhaustion requirement "turns on an inquiry into what procedures are 'available' under state law." *O'Sullivan*, 526 U.S. at 847. Under Pennsylvania law, a federal claim becomes exhausted once it is presented to the Pennsylvania Superior Court, either as a direct appeal from a state criminal conviction or as an appeal from a PCRA Court's denial of post-conviction relief. *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (finding that review from the Pennsylvania Supreme Court is unavailable, and therefore not required, for purposes of exhausting state court remedies).[4]

Nor may a federal court grant a habeas petition if the state court's decision rests on a violation of a state procedural rule, even if the claim is properly exhausted. *Johnston v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva v. Williams*, 504 F.3d 357, 365-66 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007)).

### 4.    Federal Habeas Review of Unexhausted, Defaulted Claims

If a state prisoner has not fairly presented a claim "to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into

---

[4]    Traditionally, under Pennsylvania law, exhaustion meant that a claim must be presented to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County, PA*, 959 F.2d 1227, 1230 (3d Cir. 1992). However on May 9, 2000, the Pennsylvania Supreme Court issued Judicial Administration Order 218, which provides that "in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief. . . . " *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam).

play." *Carpenter*, 296 F.3d at 146 (citations omitted). The doctrine of procedural default serves as a corollary to the exhaustion requirement and provides a basis for a federal court to refuse to review a habeas claim. Federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate "cause" to excuse the default and "actual prejudice resulting from the alleged constitutional violation." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 375 (3d Cir. 2018) (quoting *Davila v. Davis*, -- U.S. ---, 137 S. Ct. 2058, 2065 (2017) (quoting *Wainwright v. Skyes*, 433 U.S. 72 (1977)), *cert. denied*, -- U.S. ---, 139 S. Ct. 1613 (2019).[5] The burden lies with a petitioner to demonstrate circumstances that would serve to excuse a procedural default. *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750.

"Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted). To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but that they "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008) (quoting *United States v.*

---

[5]     A petitioner, alternatively, can overcome a procedural default by demonstrating that the court's failure to review the defaulted claim will result in a "miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 748 (1991); *McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999). "However, this exception is limited to a 'severely confined category [] [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'." *Preston v. Superintendent Graterford SCI,* 902 F.3d 365,375 n.11 (3d Cir. 2018) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (internal alteration in original) (quoting *Schlup v. Delo*, 514 U.S. 298, 329 (1995)). Further, the Court concludes that nothing in the record suggests that Turner could have met the *Schlup* test. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (explaining that the miscarriage of justice standard "requires 'new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.'").

*Frady*, 456 U.S. 152, 170 (1982)). If cause and prejudice are established, the federal court reviews the claim "*de novo* because the state court did not consider the claim on the merits." *Bey*, 856 F.3d at 236 (citation omitted).

Each of Turner's claims will be reviewed with these standards in mind.

D.     *Discussion*

1.     Claim One – Layered  Due Process and Ineffective Assistance of Trial Counsel Claim

Turner's first claim presented on federal habeas review is a layered claim in which he raises (1) a due process claim contending that he was denied access to critical evidence seized by the police, specifically the two vials of blood taken from him on the date of his arrest,  and (2) an ineffective assistance of counsel claim for counsel failing "to take action to preserve Petitioner's seized blood evidence and failed to assert Pennsylvania Discovery and inspection and *Brady* claims concerning seized blood evidence when that evidence was favorable to Petitioner's defense was destroyed by or at the request of the Commonwealth."  Reply at 11 (ECF No. 22). Turner argues his "seized blood evidence was indispensable evidence for the measure of his mental impairment from his prescription Zanax and alcohol and his free will was overborne when interrogated by police and gave a damaging statement." *Id*.

The Court notes that while Turner has raised the issue of the destruction of the blood samples several times as an ineffective assistance of counsel claim, Turner failed to fully develop the issue as a *Brady* violation in any state court proceedings. Accordingly, the claim is procedurally defaulted and this Court cannot consider the claim unless Turner establishes cause and prejudice or a fundamental miscarriage of justice sufficient to excuse the default. *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 375 (3d Cir. 2018) (stating that federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate

"cause" to excuse the default and "actual prejudice" resulting from the alleged constitutional violation.). Turner has not met this burden. As a result, this due process claim will be denied as it is procedurally defaulted and federal review is barred.

Even if Turner did fully develop this claim before the instant petition, it would still fail on the merits. Turner argues in his Reply that:

> The intentional un-warned destruction of indispensable blood evidence for toxicology even before the creation of the lab report of [its] analysis and before Petitioner could likely take preservation measures constituted bad faith warranting seeking the most appropriate sanctions of precluding the Commonwealth's use of the blood including expert testimony on analysis for serology and DNA.

Reply at ¶1 (ECF No. 21).

Under *Brady*, a violation of due process occurs when the prosecution withholds favorable evidence from the accused and the evidence is material to the accused's guilt or punishment. *Brady*, 373 U.S. at 87. Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). As *Brady* pertains to lost or destroyed evidence, failing to preserve "potentially useful evidence" does not violate due process unless the defendant shows that the police acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The Pennsylvania Superior Court thoroughly explained how *Brady* applies to "materially exculpatory" evidence, but does not apply to "potentially useful" evidence. This Court adopts that explanation as its own and finds there was no *Brady* violation:

> "Under *Brady* [*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature." *Commonwealth v. Roney*, 622 Pa. 1, 22, 79 A.3d 595, 607 (2013), cert. denied, -- .S. --, 135 S.Ct. 56, 190 L.Ed.2d 56 (2014). "To establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was

suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Id*. When the Commonwealth fails to preserve "potentially useful" evidence, as opposed to "materially exculpatory" evidence, no due process violation occurs unless the defendant can prove the Commonwealth acted in bad faith. ***Commonwealth v. Chamberlain***, 612 Pa. 107, 30 A.3d 381 (2011), cert. denied, 566 U.S. 986, 132 S.Ct. 2377, 182 L.Ed.2d 1017 (2012). "Potentially useful evidence is that of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id*. at 143, 3 A.3d at 402 (internal quotation marks omitted).

Instantly, Appellant wanted to use both the blood sample and the police station video to show he was intoxicated when he gave his inculpatory statement to police. The video surveillance and the blood evidence obtained from Appellant at the time of his statement, however, were only "potentially useful," as the evidence **could** have been subjected to tests that **might** have assisted in Appellant's defense. *See id*. Because the evidence was potentially useful at best, Appellant was required to show that the Commonwealth acted in bad faith regarding the destruction of the evidence at issue. Here, Appellant failed to submit any evidence that the Commonwealth acted in bad faith or to contradict the assertions that the video evidence was recycled in due course.

(SCR No. 1248 – 49).

Turner has not sufficiently established prejudice, or that the blood evidence would have affected the outcome of the trial. Accordingly, to the extent it has not been procedurally defaulted, Turner's due process claim will be dismissed as it is without merit.

Turner next contends that "[c]ounsel failed to take immediate action just days after Petitioner's arrest to locate and test the seized blood for a requested toxicology analysis from Petitioner." Reply at 13 (ECF No. 22). This issue was raised by Turner in his collateral appeal proceeding, but it was not raised in his PCRA petition. As such, the Superior Court found the issue was waived. (SCR at 1245, n.1).

A federal court ordinarily may not review a claim on the merits if the state court's denial of relief is based on a procedural default that rests on a state law ground that is independent of the federal question and adequate to support that judgment. *Maples v. Thomas*, 565 U.S. 266, 820 (2012); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Such a scenario happened in this

case when the Superior Court determined that the claim was waived pursuant to Pennsylvania's waiver rule, 42 Pa. C.S. § 9544(b).[6]   Relevant here, the Court of Appeals for the Third Circuit has held the waiver rule in § 9544(b) to be an independent and adequate state ground for the purpose of the procedural default doctrine. *See Patton v. Sup't Graterford SCI*, 2017 WL 5624266, at *1 (3d Cir. 2017) (denying a certificate of appealability because, *inter alia*, "[j]urists of reason would not disagree that Patton's remaining claims are procedurally defaulted as the state court's reliance on 42 Pa. Cons. Stat. § 9544(b) provides an independent and adequate ground to support the judgment.") (citation omitted).   Here, the Superior Court's decision rests comfortably on such basis.

Because the Superior Court's decision was based on an independent and adequate state procedural rule, this claim is procedurally defaulted.  *See Coleman*, 501 U.S. at 731-32. And because the claim is procedurally defaulted, this Court cannot consider it unless Turner establishes cause and prejudice or a fundamental miscarriage of justice sufficient to excuse the default. *Preston,* 902 F.3d at 375. Turner has not met this burden.

For these reasons, the grounds for relief raised in Claim One will be denied because they are procedurally defaulted and federal review is barred.   Alternatively, to the extent the due process claim has not been procedurally defaulted, it will be  dismissed as it is without merit.

### 2.    Claims Two – Eight; Ineffective Assistance of Counsel Claims

Claims alleging ineffectiveness of counsel are grounded in rights guaranteed under the Sixth Amendment.   The Supreme Court of the United States in *Strickland v. Washington*, 466

---

[6]      Title 42, Pa. Cons.Stat. § 9544(b), specifically states that "[a]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."  *See also Commonwealth v. Williams*, 909 A.2d 383, 386 (Pa. Super. 2006) (holding issues not raised in PCRA petition are waived on appeal); *Commonwealth v. Brown*, 767 A.2d 576, 585 (Pa. Super. 2001) (same).

U.S. 668 (1994), announced the test that a habeas petitioner must satisfy before a federal court could find that counsel failed to provide effective assistance under the Sixth Amendment. This same standard has been incorporated by Pennsylvania courts as the proper basis to consider challenges for ineffective assistance of counsel under the Pennsylvania constitution. *See Commonwealth v. Pierce*, 527 A.2d 973, 976 (Pa. 1987) (stating that Pennsylvania courts apply elements of the *Strickland* test to ineffective assistance of counsel claims). A Pennsylvania court's resolution of an ineffective assistance claim, therefore, is presumed to apply clearly established federal law and is due the substantial deference required by 28 U.S.C. § 2254(d).

Under the two-prong *Strickland* test, a petitioner must show: (1) that his attorney's representation fell well below an objective standard of reasonableness; and (2) that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. 466 U.S. at 688-96. To satisfy the first prong of the *Strickland* test, a petitioner must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. To meet the second prong of the *Strickland* test, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*. It is self-evident that counsel cannot be ineffective for failing to pursue meritless claims or objections. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Turner raised the following seven ineffective assistance of counsel claims to the Superior Court, all of which have been raised in this federal habeas petition:

1. WHETHER THE PRIOR LEGAL TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO TAKE ACTION TO PRESEVE, OBTAIN AND ANALYZE (A) THE SAMPLE OF [APPELLANT'S] BLOOD SEIZED BY POLICE IMMEDIATELY AFTER THE SEIZURE OF [APPELLANT'S]

INCULPATORY STATEMENT TO POLICE AND (B) THE FOOTAGE OF VIDEO SURVEILLANCE OF [APPELLANT] ENTERING AND EXITING THE POLICE STATION IMMEDIATELY BEFORE AND AFTER THE POLICE SEIZURE OF [APPELLANT'S] INCULPATORY STATEMENT FOR ADMISSION TO CORROBORATE [APPELLANT'S] INTOXICATED AND CONFUSED STATE ON THE ISSUE OF WHETHER IT WAS A KNOWING, INTELLIGENT AND VOLUNTARY STATEMENT.

2. WHETHER PRIOR LEGAL TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MARSHAL AND INTRODUCE, DURING BOTH (A) A HEARING TO SUPPRESS AND (B) TRIAL, AVAILABLE EVIDENCE FROM AT LEAST THREE WITNESSES IN THE COMPANY OF [APPELLANT] IMMEDIATELY PRIOR TO THE POLICE SEIZURE OF [APPELLANT'S] STATEMENT AS TO [APPELLANT'S] INTOXICATED AND CONFUSED STATE ON THE ISSUE OF WHETHER IT WAS A KNOWING, INTELLIGENT AND VOLUNTARY STATEMENT?

3. WHETHER PRIOR LEGAL TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE TO SUPPRESS OR PROHIBIT THE EVIDENTIARY USE AT TRIAL OF ANY EVIDENCE INVOLVING THE ANALYSIS OF [APPELLANT'S] BLOOD SEIZED BY POLICE FOR A VIOLATION OF [APPELLANT'S] FEDERAL AND STATE CONSTITUTIONAL DUE PROCESS RIGHTS OF MEANINGFUL OPPORTUNITY TO PREVENT A DEFENSE? [7]

4. WHETHER PRIOR LEGAL TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO ALL TESTIMONY OF THE COMMONWEALTH FORENSIC PATHOLOGIST NOT EXPLICITLY CONTAINED WITHIN HIS EXPERT AUTOPSY REPORT, ESPECIALLY HIS EXPERT OPINIONS THAT THE DECEDENT WAS UNCONSCIOUS AND PRONE WHILE STABBED MULTIPLE TIMES?

5. WHETHER PRIOR LEGAL TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MARSHAL, LOCATE, SECURE THE ATTENDANCE OF, AND INTRODUCE TESTIMONY OF AVAILABLE WITNESSES AND OTHER CHARACTER EVIDENCE OF THE DECEDENTS VIOLENT PROPENSITIES IN GENERAL AND A SPECIFIC STATEMENT OF INTENTION OF VIOLENCE TOWARD [APPELLANT]?

---

[7] The Superior Court found that the third issue was waived as Turner had "failed to raise any claim of trial counsel's ineffectiveness for failure to move to suppress or preclude the Commonwealth's use of any evidence involving the analysis of Appellant's blood sample." (SCR at 1245). This issue is addressed *supra* in the discussion of Claim One of the federal habeas petition.

6. WHETHER PRIOR LEGAL TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A JURY INSTRUCTION OF AN ADVERSE INFERENCE FROM THE DESTRUCTION OF [APPELLANT'S] BLOOD SEIZED BY POLICE AND THE POLICE VIDEO AS IT RELATES TO BOTH (A) WHETHER [APPELLANT'S] INCULPATORY STATEMENT TO POLICE WAS KNOWING, INTELLIGENT AND VOLUNTARY, AND (B) WHETHER [APPELLANT] WAS CAPABLE OF FORMING A SPECIFIC INTENT TO KILL?

7. WHETHER PRIOR LEGAL TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A JURY INSTRUCTION TO THE EFFECT THAT A DEFENDANT CANNOT BE FOUND TO HAVE ACTED WITH MALICE UNLESS IT FINDS THAT THE VICTIM'S INJURIES WERE CAUSED BY THE DEFENDANT'S INTENTIONAL AND VOLUNTARY ACTION(S) – INVOLUNTARY ACTION IS NOT SUFFICIENT?

(SCR AT 1243 – 45). The Superior Court denied Claims 1, 2, 4, 5, 6, and 7 on their merits. As a result, this Court's review of those claims is governed by AEDPA's standard of review.

In affirming the PCRA court's opinion dismissing the PCRA Petition, the Superior Court explained:

> Regarding Appellant's issues one, two, four, five, and seven, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable James J. Ross, we conclude these issues merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented (See PCRA Court Opinion, dated January 30, 2018, at 20-19) (finding: the Appellant's complaints of trial counsel's ineffectiveness for failing to preserve, obtain, and analyze blood sample, to obtain surveillance video, and to request jury instruction on involuntariness defense lacked arguable merit and counsel's strategy cannot be challenged simply by comparing in hindsight trial strategy employed with alternatives not pursued; claims of counsel's failure to call Appellant's relatives as witnesses, counsel's failure to object to certain testimony of pathologist, and counsel's failure to utilize evidence of Victim's propensity for violence were explained by counsel's reasonable trial strategy). Accordingly, as to issues one, two, four, five, and seven we affirm on the basis of the PCRA court's opinion.

(SCR at 1247-48).

The Superior Court began its analysis by applying the Pennsylvania test for ineffective assistance of counsel derived from *Commonwealth v. Pierce*, 527 A.3d 973 (Pa. 1987). (SCR at

1246).  The "Pierce Test" has been found to be materially identical to the *Strickland* test.  *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2008).  Thus, the Superior Court did not apply a rule of law that contradicts established Supreme Court precedent and therefore its decision was not contrary to clearly established Supreme Court precedent.

The only question here is whether the Pennsylvania Superior Court unreasonably applied the *Strickland* standard or otherwise based its decision upon an unreasonable factual determination.[8] That is, this Court must also analyze Turner's ineffectiveness claims under the "unreasonable application" provision  of 28 U.S.C. §2254(d).  "Under that provision, the appropriate inquiry is whether the Pennsylvania courts' application of *Strickland* to [Turner's] ineffectiveness claim was objective unreasonable, i.e., the state court decision evaluated objectively and on the merits, resulted in an outcome that cannot reasonable be justified under Strickland."  *Werts,* 228 F.3d at 204.  The question then is whether "the Pennsylvania Superior Court's determination that trial counsel rendered effective assistance was not an unreasonable applicable of *Strickland*."  *Id.* Because the Superior Court denied these claims by essentially adopting as its own Judge James J. Ross's comprehensive, thirty-page PCRA Memorandum Opinion filed on January 30, 2018,  this Court must apply the AEDPA standard of review to the PCRA court's rationale. *See Fountain v. Kyler,* 420 F.3d 267, 273–74 (3d Cir. 2005).

After conducting an evidentiary hearing, at which Turner, three of his family members, and his trial counsel testified, the PCRA court found the testimony of counsel to be credible and determined that counsel's actions were a matter of strategy and tactics, all of which had some reasonable basis:[9]

---

[8]    This Court's review is limited to the last state court decision to pass on the merits of a particular claim.  See *Wright v. Vaughn*, 473 F.3d 85, 90 (3d Cir. 2006).  Thus, this Court's review centers on the Superior Court's decision of March 11, 2019. (SCR at 1241).

(1)     The state courts found that counsel acted reasonably in failing to secure the vials of blood that were destroyed at the Pennsylvania Police Crime Laboratory.   Counsel credibly testified at the PCRA hearing that he intended to challenge the destruction of this material in a direct appeal of the case, but was denied that opportunity when Turner withdrew his direct appeal.   Moreover, counsel testified that Turner testified at trial as to his intoxication to challenge that the statement he gave at the police station was voluntary.[10]

(2)     The state courts found that counsel acted reasonably in failing to object to certain expert testimony given by Dr. James Smith, a forensic pathologist.    The PCRA court found that the testimony of counsel raised a "matter of strategy and tactics" and "there was a reasonable basis for defense counsel to take the position chosen."  Counsel testified that he did not object to the expert's testimony that the victim was unconscious at the time of the stab wounds were inflicted because he believed "that Dr. Smith's testimony and the location of the wounds was indicative of a struggle.  [Counsel] cross-examined Dr. Smith on these issues." Further counsel testified he hired a forensic toxicologist, Frederick Fochtman, who testified at trial that there was both cocaine and alcohol in the victim's system.  Counsel intended to use this testimony along with the defendant's testify to verify that a struggle occurred. Counsel also testified that he did not object to the testimony that the manner of death was  "homicide," because the manner of death in the autopsy was listed as homicide, and counsel understood "homicide" to mean a killing.[11]

(3)     The state courts found that counsel acted reasonably in failing to request a charge for involuntariness.   The PCRA court noted that "[t]o the extent that defendant claims his intoxication renders his conduct involuntary, the law is clear that intoxication is not a basis to negate intent. ***Commonwealth v. Graves***, 461 Pa. 118, 394 A.2d 661 (1975)."  Moreover, defense counsel "asserted that defendant's theory was one of self-defense, and not involuntariness. . . . The issue

---

[9]     This Court is bound by the state courts' findings of fact and credibility determinations under  28 U.S.C. § 2254(e)(1) .

[10]     This claim is raised as parts of Grounds One, Six, and Seven in the federal habeas petition.

[11]     These claims are raised as Grounds Two, Three, and Five in the federal habeas petition. It is not clear from the state court record whether Turner raised the issue about Dr. Smith quoting from the autopsy report and stating the manner of death was homicide to the Superior Court. The issue was raised, however, in the PCRA petition as Claim 4.  To the extent this issue was not raised on PCRA appellate review, it is procedurally defaulted and this Court cannot consider it unless Turner establishes cause and prejudice or a fundamental miscarriage of justice sufficient to excuse the default. Turner has not met this high standard.  To the extent the claim was raised, the claim lacks merits when evaluated under the AEDPA standard.

of involuntariness was factored into, and covered by, the asserted self-defense theory, and this claim by the defendant lacks merit."[12]

(4)     The state courts found that counsel acted reasonably in failing to call Turner's three family members "because of their relationship with, and allegiance to, the defendant and because their testimony appeared rehearsed to him" and that counsel "did not believe these individuals to be credible and chose to go with the testimony of the defendant." Additionally, the state courts found that counsel acted reasonably in failing to secure the videotape surveillance at the Aliquippa police station. Counsel credibly testified that the video was requested, but was not available.[13]

(5)     The state courts found that counsel acted reasonably in failing to procure testimony as to character evidence of the decedent. Again, the state courts found this was a strategy decision by counsel. Counsel testified that he felt the testimony was rehearsed, that any evidence of the victim's past criminal history was not only remote, but also involved damage to property and not harm to any individuals; and that he did not use the victim's mental health records of depression because they did not equate to aggression or violent propensities. Counsel also testified that he secured the services of an investigator to try to obtain records regarding the victim's history of aggressive behavior, but the investigator was not able to find anything worth using.[14]

To prevail on a claim that the state court has adjudicated on the merits, Turner must demonstrate that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold"). Turner has not met that high threshold. Viewing the Superior Court's disposition of these claims through the deferential lens of AEDPA, the Court has no hesitancy in concluding that Turner has failed to carry his burden to persuade this Court that the

---

[12]     This claim is raised as Ground Four in the federal habeas petition.

[13]     This claim is raised as part of Ground Six in the federal habeas petition.

[14]     This claim is raised as Ground Eight in the federal habeas petition.

Superior Court's disposition was unreasonable, yet alone incorrect. For this reason, Claims Two, Three, Four, Five, Six, and Eight will be denied.

Turner's last ineffective assistance of counsel claim, Ground Seven, is that trial counsel failed to "request an adverse inference instruction concerning the blood evidence when that evidence was missing or otherwise destroyed by or at the request of the Government." Pet. at 24 (ECF No. 1). The Superior Court denied this claim explaining:

> In Appellant's remaining issue (six), Appellant argues trial counsel failed to request an adverse inference instruction relating to the destruction of Appellant's blood sample and the police station surveillance video. Appellant avers counsel should have requested an instruction specifically addressing the loss of this evidence to allow the jury to infer that the missing evidence would have been unfavorable to the Commonwealth and favorable to Appellant. Appellant alleges an adverse inference instruction could have partially mitigated counsel's initial failure to obtain, preserve, and analyze the blood sample and to obtain the video. Appellant concludes this Court should "arrest judgment on the count of Murder- [3rd degree] and grant him a new trial." (See Appellant's Brief at 47.) We disagree.

(SCR at 1247-48).

After discussing *Brady v. Maryland*, 373 U.S. 83 (1963) and subsequent decisional law, and stating that a prosecutor has an obligation to disclose all exculpatory information, the Superior Court found Turner's claim to be without merit because the blood samples were not "materially exculpatory evidence," but rather were "potentially useful" evidence, and no due process violation occurs unless the defendant can prove the Commonwealth acted in bad faith:

> Instantly, Appellant wanted to use both the blood sample and the police station video to show he was intoxicated when he gave his inculpatory statement to police. The video surveillance and the blood evidence obtained from Appellant at the time of his statement, however, were only "potentially useful," as the evidence **could** have been subjected to tests that **might** have assisted in Appellant's defense. **See id.** Because the evidence was potentially useful at best, Appellant was required to show that the Commonwealth acted in bad faith regarding the destruction of the evidence at issue. ***See id***. Here, Appellant failed to submit any evidence that the Commonwealth acted in bad faith or to contradict the assertions that the video evidence was recycled in due course. Trial counsel

indicated only that by the time he requested the video surveillance, it was no longer available.

As for the blood samples, the Commonwealth utilized them for DNA analysis, whereas Appellant wanted the blood samples to show he was inebriated when he made his statement to the police. The crime lab, however, disposed of the blood samples pursuant to lab protocol, which provided for specimens to be retained for thirty days. The blood evidence might have been "potentially useful" but, absent more, the evidence was not "materially exculpatory." Appellant failed to prove any due process violation occurred as a result of the disposal of the blood evidence. *See id.*

As to the potential to use the evidence to demonstrate Appellant's incapacity to form the specific intent to kill, we observe the jury convicted Appellant of third-degree murder, which does not require the specific intent to kill. *See Commonwealth v. Clemons*, -- a.3d ---, 2019 WL 286565 (Pa. filed January 23, 2019) (reiterating voluntary intoxication for diminished capacity purposes serves only to reduce first-degree murder to third-degree murder); *Commonwealth v. Reed*, 583 A.2d 459 (Pa.Super. 1990), *appeal denied*, 528 Pa. 629, 598 A.2d 282 (1991) (explaining evidence of voluntary intoxication may reduce first-degree murder to third-degree murder, but cannot reduce third-degree murder to manslaughter). Appellant's voluntary intoxication had already been used to mitigate the specific intent to kill. Thus, Appellant's claim regarding an adverse inference instruction related to the surveillance video and blood samples lacks arguable merit. Because Appellant's underlying claim lacks arguable merit, he fails to meet the first prong of the ineffective assistance of counsel. *See Williams, supra; Kimball, supra; Pierce, supra*. Therefore, counsel cannot be deemed on PCRA review as ineffective for failing to pursue a meritless claim and Appellant's sixth issue warrants no relief. Accordingly, we affirm.

(SCR at 1249-50).

Viewing the Superior Court's disposition of this claim through the deferential lens of AEDPA, this Court finds that not only did the Superior Court reasonably apply the *Strickland* standard, its decision was based upon a reasonable factual determination. Thus, Turner, is not entitled to relief from this Court on Ground Seven.

E.  Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas

petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying that standard here, the Court concludes that jurists of reason would not find it debatable whether each of Turner's claims should be denied. For these reasons, a certificate of appealability will be denied.

## III. CONCLUSION

For all of the above reasons, the instant habeas petition for a writ of habeas corpus will be denied and will a certificate of appealability. An appropriate Order follows.


DATED:  June 23, 2021                                  BY THE COURT:
                                                       s/ Cynthia Reed Eddy
                                                       Cynthia Reed Eddy
                                                       Chief United States Magistrate Judge

cc:     **JAMES R. TURNER, JR.**
        ML-8782
        SCI-Dallas
        SPECIAL MAIL-OPEN ONLY IN THE PRESENCE OF PETITIONER
        1000 Follies Road
        Dallas, PA 18612
        (via U.S. First Class Mail)

        **Richard E. Absey**
        Beaver County District Attorney
        (via ECF electronic notification)